GEORGE LARABEE *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Hampden.     September 23, 1902. — December 2, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Railroad.*

The tender of a locomotive is not a car within the meaning of St. 1895, c. 362, § 2, (R. L. c. 111, § 203,) requiring cars to be equipped with automatic couplers.

TORT by a brakeman in a freight yard of the defendant for injuries received while attempting to couple the tender of a locomotive to a freight car. Writ dated January 28, 1901.

At the trial in the Superior Court before *Maynard,* J., the

jury returned a verdict for the plaintiff in the sum of $3,500; and the defendant alleged exceptions.

The case was submitted on briefs at the sitting of the court in September, 1902, and afterwards was submitted on briefs to all the justices.

*W. S. Robinson*, for the defendant.

*J. B. Carroll & W. H. McClintock*, for the plaintiff.

HOLMES, C. J.    This is an action for personal injuries caused by the catching of the plaintiff's hand between a car and the tender of an engine when he was trying to couple the two. The plaintiff had a verdict, and his case is here on the defendant's exceptions. The car was equipped with an automatic coupler, as required by St. 1895, c. 362, § 2, (R. L. c. 111, § 203,) but the tender was not, so that the coupling had to be done in the old way with a link and pin. The plaintiff's case was that the tender should have been equipped in the same manner as the car.

The section cited copies, for traffic within the State, the provisions of U. S. St. 1893, c. 196, § 2, as to interstate commerce. The material words are " No railroad corporation shall haul or permit to be hauled or used on its lines . . . any car which is not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." By a later section it is enacted that "any employee of such corporation who may be injured by any locomotive, car or train in use contrary to the provision of this act shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such corporation after the unlawful use of such locomotive, car or train has been brought to his knowledge." § 7. The defendant asked a ruling that a tender of a locomotive is not a car within the meaning of the act. The refusal of this raises the only question with which it is necessary to deal.

The court is of opinion that the ruling requested should have been given. It may be, as some of us think, that the rear end of the tender is within the policy and object of the act, but the word " car " in its ordinary use and acceptance does not include it. On the contrary it excludes the tender as obviously as it does the engine. It always is dangerous to give unusual mean-

ings to the words of a document on the strength of an imagination of what the writer had in mind. Moreover, the other language of the section indicates that, whatever the evil which the Legislature sought to prevent, it had in mind only cars properly so called. The prohibition "no railroad corporation shall haul" hardly would be so expressed if it had in conscious view not merely the cars which are regarded as the inert objects of traction by a separate engine from which they are detached daily, but also the tenders which are so much more closely associated with the source of power as almost to be regarded as one with it, and which only exceptionally and with more or less difficulty are taken apart from it.

It is said that the word has been interpreted in the same way by the United States Circuit Court. 15 Rep. Interst. Commerce Comm. 67.

*Exceptions sustained.*

## MEMORANDA.

ON the eighth day of December, 1902, the Honorable OLIVER WENDELL HOLMES by becoming an Associate Justice of the Supreme Court of the United States made vacant the office of Chief Justice of this Court which he had held since the second day of August, 1899, previously having held the office of a Justice of this Court from the fifteenth day of December, 1882.

ON the seventeenth day of December, 1902, the Honorable MARCUS PERRIN KNOWLTON was appointed Chief Justice of this Court, having held the office of a Justice of this Court since the fourteenth day of September, 1887. He first sat as Chief Justice on the twelfth day of January, 1903.

ON the twenty-fourth day of December, 1902, the Honorable HENRY KING BRALEY, one of the Justices of the Superior Court, was appointed a Justice of this Court. He first sat with the Court on the twelfth day of January, 1903.